IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-2206-PAB

SAMUEL SPARHAWK LUTHY,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Civil Complaint [Docket No. 1] filed by plaintiff Samuel Sparhawk Luthy on September 12, 2017. Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner")[1] denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

# I. BACKGROUND

On September 3, 2013, plaintiff applied for supplemental security income under Title XVI of the Act. R. at 23. Plaintiff alleged that he was disabled as of August 22,

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

1995.  *Id*.  After an initial administrative denial of his claim, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held hearings on February 26, 2015, June 5, 2015, September 25, 2015, and May 3, 2016.  *Id*.  On July 12, 2016, the ALJ issued a decision denying plaintiff's claim.  R. at 20.  The ALJ found that plaintiff had the following severe impairments: attention deficit/hyperactivity disorder, mood disorder, expressive language disorder, and fetal alcohol spectrum disorder.  R. at 29.  The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments.  R. at 31.  The ALJ ruled that plaintiff had the residual functional capacity ("RFC") to

> perform work as follows.  Physically, he is able to perform a full range of work at all exertional levels.  Mentally, the claimant is able to use judgment in making work decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting.  The claimant is able to understand, remember, and carry out simple instructions.  This ability is equivalent to being able to perform unskilled work.  The claimant should not perform any assembly-line work.  The claimant should not engage in work requiring intense sustained concentration.  The claimant is able to interact with the public less than occasionally.  The claimant is able to interact with coworkers occasionally.

R. at 34 (footnotes omitted).  In determining the RFC, the ALJ considered the opinions of several medical sources.  The ALJ gave the least weight to the opinions of Ms. Carly Johnson, a psychological evaluator, Ms. Susan Leahy, a neurotherapist, Dr. Joseph Martindale, plaintiff's treating physician, and Dr. M. Elena Zerpa Stolk; some weight to the opinions of Dr. Mark Pendleton, a clinical psychologist, and Dr. Maximilian Wachtel, a clinical psychologist; more weight to the opinions of Dr. James Wanstrath, the state agency psychological consultant; and the most weight to the opinions of Dr. Nancy Winfrey, the medical expert who testified at the hearing.  R. at 49.  Based upon this

RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is capable of performing jobs that exist in significant numbers in the national economy.  *Id*.  Specifically, the VE identified two positions that plaintiff could perform, janitor and laundry worker.  *Id*.  Each of these positions is performed at a medium exertional level and is classified as unskilled, with a specific vocational preparation ("SVP") level of two.  *Id*.  The ALJ found that there are approximately 800,000 jobs nationwide in these positions.  *Id*.

On July 12, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's denial of his claim.  R. at 1.  Given the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5)

whether the impairment precludes the claimant from doing any work. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred by: (1) failing to properly weigh the medical opinion evidence and (2) failing to properly weigh testimony from plaintiff and plaintiff's mother. Docket No. 12 at 18-30.

### A. Medical Source Testimony

"[C]ase law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a

claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).[3]

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[3] In 2017, the regulations were changed to no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c. Because plaintiff's claim was filed before 2017, the former regulations apply. *See* 20 C.F.R. § 404.1527 ("Generally, we give more weight to medical opinions from your treating sources.").

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal. *Watkins*, 350 F.3d at 1300-01.

When evaluating a treating or examining physician's opinion in relation to that of a non-treating physician, the examining or treating physician's opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1)). However, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Accordingly, "the examining physician's report should be examined to see if it 'outweighs' the treating physician's report, not the other way around." *Reyes v. Brown*, 845 F.2d 242, 245 (10th Cir. 1988). An examining physician's opinion, however, is generally given more weight than a physician's who did not examine the claimant. "The regulations require an ALJ to give greater weight to the opinion of an examining physician . . . than that of a non-examining physician, or explain why the examining physician's opinion is not

7

entitled to more weight." *Havenar v. Astrue*, 438 F. App'x 696, 700 n.3 (10th Cir. 2011) (unpublished).

The ALJ considered the opinions of four treating sources – Dr. Pendleton, Dr. Martindale, Ms. Johnson, and Ms. Leahy – and four non-treating sources – Dr. Wanstrath, Dr. Stolk, Dr. Wachtel, and Dr. Winfrey, the Medical Expert ("ME"). R. at 41-44. The ALJ first determined that none of the treating sources were entitled to controlling weight because their opinions were not consistent with the other substantial evidence in the record. R. at 40-41. Proceeding to relative weight, the ALJ gave the least weight to Dr. Martindale's, Ms. Johnson's, Ms. Leahy's, and Dr. Stolk's opinions, some weight to Dr. Pendleton's and Dr. Wachtel's opinions, more weight to Dr. Wanstrath's opinions, and the most weight to Dr. Winfrey's opinions. R. at 49. Plaintiff contends that the ALJ erred in evaluating the medical opinion evidence by: (1) not giving controlling weight to the opinions from Dr. Martindale, a treating physician; (2) improperly giving greatest weight to Dr. Winfrey's opinions; (3) giving some weight to opinions from a non-examining state agency psychologist; and (4) rejecting the limitations described by Dr. Wachtel. Docket No. 12 at 18-27.

"Even if a treating opinion is not given controlling weight, it is still entitled to deference." *Krauser*, 638 F.3d at 1330. The ALJ was required to weigh several factors in determining the weight to be accorded to the treating physicians' opinions. 20 C.F.R. § 404.1527(c); SSR 96-2p, 1996 WL 374188, *4. The ALJ does not need to discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), but the ALJ must nevertheless consider each factor and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*,

350 F.3d at 1300 (internal quotation marks and brackets omitted); *Romo v. Berryhill*, No. 16-cv-02248-WJM, 2017 WL 3911071, at *5 (D. Colo. Sept. 7, 2017).

With the exception of Dr. Pendleton's opinion, the ALJ gave each of the treating physicians' opinions "little weight." *See* R. at 49. The Court finds that the ALJ gave sufficient reasons for doing so. In determining whether a treating source is entitled to controlling weight, the ALJ considers whether his or her opinions are "well supported by medically acceptable clinical and diagnostic techniques" and consistent with "other substantial evidence." R. at 40 (quoting 20 C.F.R. § 404.1527(c)(2)). Here, the ALJ considered the statements of Dr. Wanstrath, a state agency medical consultant, and Dr. Winfrey, a psychologist who testified at the hearing as an independent medical expert, to determine if the treating sources' opinions were consistent with the "other substantial evidence." R. at 40-41. Both Drs. Wanstrath and Winfrey found that plaintiff's limitations would not preclude the performance of substantial gainful activity. *Id.* Therefore, the ALJ found that the treating source opinions were not consistent with other substantial evidence. R. at 41. Because the ALJ applied the correct legal standard and identified why the treating sources opinions were inconsistent with other substantial evidence, the Court finds no error in the ALJ's decision not to give the treating sources controlling weight.

After determining that Dr. Martindale's opinion was not entitled to controlling weight, the ALJ was required to "give good reasons for the weight assigned" to Dr. Martindale's opinions. *See Langley*, 373 F.3d at 1119. The ALJ considered the following factors when assigning relative weight to the medical source opinions: (1) whether the opinion came from a treating source; (2) whether the opinion came from a

person with expertise in evaluating Social Security Administration ("SSA") disability claims; (3) the extent to which the medical source opinion was consistent with the record as a whole; (4) supportability; and (5) extent of familiarity with medical information in plaintiff's record. R. at 44-45. The ALJ found that Dr. Martindale was a treating source and was entitled to more weight under this factor; Drs. Wanstreth, Winfrey, and Wachtel were experts in evaluating SSA disability claims; Drs. Winfrey's and Wantrath's opinions were more consistent with the longitudinal record than other medical sources; Drs. Wanstrath, Winfrey, and Wachtel presented more supporting medical evidence and provided better explanations for the opinions given; and Drs. Wanstrath, Wachtel, and Winfrey reviewed more of plaintiff's medical records than other sources. R. at 44-45. The ALJ afforded Dr. Martindale's opinion little weight because Drs. Winfrey's and Wanstrath's opinions were entitled to more weight than other medical sources based on four of the five factors above. *See* R. at 47. Additionally, the ALJ noted inconsistency between Dr. Martindale's determination that plaintiff was disabled, a conclusion reached in April 2015, and Dr. Martindale's medical records from later that year indicating that plaintiff's overall mood had improved. *See* R. at 47. The ALJ's decision gave detailed and specific reasons that "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119.

The reasons listed above indicate why the ALJ gave more weight to the opinions of Drs. Winfrey, Wanstrath, and Wachtel. In determining relative weight between their medical opinions, the ALJ gave Dr. Winfrey the most weight because (1) of the three of

them, Dr. Winfrey was the only one qualified by SSA to serve as a medical expert to testify at the hearing; (2) Drs. Winfrey's and Wanstrath's opinions were more consistent with the record than other medical sources; and (3) Dr. Winfrey reviewed more medical records than Drs. Wanstrath and Wachtel.  R. at 45.  Because no medical source was entitled to controlling weight, the ALJ properly considered these factors when evaluating the relative weight of each medical source opinion.  *See* 20 C.F.R. § 404.1527(c) (listing factors an ALJ considers in weighing medical opinions when no opinion is given controlling weight).  Dr. Winfrey satisfied more of these factors than any other medical source.  R. at 44-45.  This list of reasons is supported by the record and constitutes substantial evidence for the ALJ to give Dr. Winfrey's opinions the most weight.

Plaintiff claims that the ALJ could not rely on Dr. Winfrey's testimony because Dr. Winfrey never addressed plaintiff's RFC.  Docket No. 12 at 23.  Plaintiff cites to *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), where the court found that the ALJ could not base an RFC determination on two reports that did not address her RFC or provide affirmative evidence of her RFC.  *Id.*  This argument is inapposite because Dr. Winfrey agreed with Dr. Wanstrath's assessment, which provided for a functional capacity to perform at least unskilled work in jobs involving minimal public interaction.  R. at 44.  Plaintiff's reference to *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001), is unavailing.  In that case, "no medical opinion support[ed] the ALJ's residual functional capacity determination."  *Id.*  In this case, Dr. Wanstrath specifically provided for an RFC, and Dr. Winfrey agreed with it.  R. at 44.  Plaintiff also cites *Allen v. Bowen*, 881 F.2d 37, 41-42 (3d Cir. 1989), where the court found that a consulting physician's

silence on weight restrictions was not considered to be affirmative evidence of no restrictions when plaintiff's treating physician had prescribed them.  *Id.*  As with the other cases cited, this is inapplicable because Dr. Winfrey agreed with Dr. Wanstrath's RFC.  *See* R. at 44.

Additionally, plaintiff fails to rebut any of the other reasons given by the ALJ for assigning Dr. Winfrey the most weight, *see* Docket No. 12 at 23-24, and fails to point to any specific evidence in the record that would undermine the evidence relied on by the ALJ.  *See Musgrave*, 966 F.2d at 1374.

Plaintiff alleges that the ALJ should not have given Dr. Wanstrath's opinion "some weight" because Dr. Wanstrath was a non-examining source who reviewed an old and undeveloped record.  Docket No. 12 at 24.  Dr. Wanstrath "reviewed the evidence of record in January 2014 and offered specific functional restrictions that support the limitations" in RFC that the ALJ found.  R. at 41.  Dr. Wanstrath opined that the plaintiff should be able to "follow simple instructions, sustain ordinary routines, make simple work-related decisions, deal with changes in routine in a work setting, and . . . respond appropriately to coworkers and supervisors."  R. at 41.  Dr. Wanstrath supported this opinion by noting plaintiff's average standardized test scores and that, while plaintiff has some organic neurocognitive deficits, plaintiff has improved over time.  R. at 41.  The ALJ concluded that Dr. Wanstrath's opinion was more consistent with the record, that Dr. Wanstrath presented more evidence to support it, and that Dr. Wanstrath reviewed more medical records than other medical sources.  R. at 45.  The ALJ considered the proper factors when examining Dr. Wanstrath's opinion and found it entitled to "some weight" because Dr. Wanstrath met more of them than other medical

sources.  R. at 44-45.  The Court finds the ALJ's decision supported by substantial evidence.

Plaintiff alleges that the ALJ erred in suggesting Dr. Wachtel was not an impartial expert because he was retained by plaintiff's representative.  Docket No. 12 at 26.  "An ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel . . . [but] may not automatically reject the opinion for that reason alone."  *Hinton v. Massanari*, 13 F. App'x 819, 825 (10th Cir. 2001) (unpublished) (internal citations omitted).  The ALJ did not reject Dr. Wachtel's opinion when he gave Dr. Wachtel "some weight."  *See* R. at 49.  The ALJ gave Dr. Wachtel's opinion's less weight than Dr. Winfrey's opinions for other reasons as well, such as because they were based on incomplete information, or information that was conflicted, disputed, or inconsistent.  R. at 46.  For example, Dr. Wachtel stated that plaintiff cannot live alone or complete activities of daily living independently, but the record showed that plaintiff regularly leaves home and stays with friends.  *See* R. at 47.  Plaintiff contends that, if the ALJ had truly given Dr. Wachtel "more weight," that would have necessitated a finding of disability for plaintiff.  Docket No. 12 at 26.  To the contrary, the Court finds that each of the ALJ's weight allocations were supported by substantial evidence.

### B.  Testimony of Plaintiff and His Mother

Plaintiff alleges that the ALJ failed to give sufficient reasons for discounting the testimony of plaintiff and his mother, Katharine Sparhawk-Luthy.  Docket No. 12 at 30.  In particular, plaintiff alleges that the ALJ erred by: (1) finding that plaintiff's daily activities were inconsistent with his claimed disability; (2) discounting plaintiff's and Ms.

Luthy's testimony based on inconsistencies about plaintiff's substance use and living situation; (3) failing to consider the impact of plaintiff's mental impairments on his capacity to understand the benefit of treatment; and (4) discounting Ms. Luthy's testimony based on inconsistencies with objective medical evidence and the record as a whole, but failing to identify any specific evidence contradicting her testimony. *Id.* at 30-31.

The framework for an ALJ to evaluate a claimant's statements about his or her symptoms is explained in 20 C.F.R. § 404.1529(c)(4):

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. **We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence,** including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.

20 C.F.R. § 404.1529(c)(4) (emphasis added). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner."[4]  SSR 16-3p, 2016 WL 1119029, at *7 (Mar.

---

[4] At the time plaintiff filed for supplemental security income on September 3, 2013, R. at 23, Social Security Ruling ("SSR") 96-7p governed the Commissioner's analysis of a claimant's subjective complaints. *See* SSR 96-7p, 1996 WL 374186 (July 2, 1996). On March 26, 2016, SSR 16-3p superseded SSR 96-7p and eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *Makeen v. Berryhill*, No. 17-

16, 2016). An ALJ is to consider the following factors relevant to a claimant's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

This Court's review of the ALJ's credibility determinations is guided by two principles. First, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). Second, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. (alterations omitted).

The ALJ found plaintiff's activities of daily living were inconsistent with his own assertions as to inability to work. R. at 35. The ALJ found that plaintiff participated in a number of daily activities, such as cooking, doing laundry, playing video games and sports, and staying overnight at friends' houses. *Id.* Plaintiff objects that these findings

---

cv-02663-CMA, 2018 WL 3633560, at *8 (D. Colo. July 31, 2018). ALJs are to apply SSR 16-3p when making determinations and decisions on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *13 n.27 (Oct. 25, 2017). The ALJ issued his decision on July 12, 2016, R. at 20, so SSR 16-3p governed the ALJ's analysis of plaintiff's subjective complaints. *See Makeen*, 2018 WL 3633560, at *8 (stating that ALJ's subjective complaint evaluation was governed by ruling in place at time of decision).

are not inconsistent with a disability.  Docket No. 12 at 29.  "While 'sporadic performance' of activities, like performing a few household tasks, 'does not establish that a person is capable of engaging in substantial gainful activity,' the Tenth Circuit has consistently held that an ALJ may reasonably consider such activities when they are inconsistent with a claimant's reported limitations."  *Wagner v. Berryhill*, 2017 WL 3981147, at *9 (W.D. Okla. Sept. 11, 2017) (quoting *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987)) (internal citation omitted).  Plaintiff claims that he cannot perform any work, yet plans to learn to drive and take college classes.  R. at 35.  The ALJ properly found that these inconsistencies "between [plaintiff's] statements and the rest of the evidence" warranted finding plaintiff's testimony less credible.  *See* 20 C.F.R. § 404.1529(c)(4).

The same is true of plaintiff's second objection, that the ALJ improperly discounted plaintiff's testimony about his symptoms and limitations based on inconsistency in statements about substance use and his living situation that were not tied to a medical impairment.  Docket No. 12 at 30.  The ALJ evaluated the plaintiff's living situation in the context of plaintiff's ability to live alone and found inconsistencies between plaintiff's assertions of disability and his conduct.  R. at 35-36.  Consideration of a claimant's activities of daily living is proper when evaluating a claimant's alleged symptoms.  20 C.F.R. § 404.1529(c)(3)(i).  The ALJ found that plaintiff's testimony about being unable to live alone was contradicted by the record, given that the evidence showed that plaintiff had indicated to medical professionals that he preferred to be homeless and was not welcome at home, showing that plaintiff was capable of living alone.  R. at 35-36.  Similarly, the ALJ evaluated plaintiff's substance use testimony and

16

found that it was contradicted by evidence in the record. R. at 36. Plaintiff claims that the ALJ did not find that plaintiff's testimony was contradicted by *medical* impairments, but that is not the standard; the ALJ is to evaluate a claimant's statements by considering any inconsistencies in the evidence "and the extent to which that are any conflicts between [a claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ's decision to discount plaintiff's testimony on ability to live alone and substance use, because it was contradicted by other evidence in the record, was supported by substantial evidence.

Plaintiff's third objection to the ALJ's credibility findings alleges that the ALJ failed to consider plaintiff's mental impairments. Docket No. 12 at 30. The ALJ found it significant that the plaintiff had periods where he stopped taking his medication and wanted to stop therapy, suggesting that plaintiff does not consider his condition as serious as he states in his claim for benefits. R. at 36. The ALJ also noted that plaintiff testified he takes all prescribed medicine, but the record showed that several suicide attempts occurred when plaintiff had stopped taking his medication. R at 35. The ALJ's decision to discount plaintiff's testimony thus related to whether his statements were contradicted by the record. The impact of plaintiff's mental impairments on his ability to understand the benefit of treatment are irrelevant for this purpose. The instances that plaintiff objects to are but a few of the many examples the ALJ cited for not regarding plaintiff as completely credible. *See, e.g.*, R. at 36 (plaintiff testified he never used illegal drugs but several suicide attempts occurred after taking street drugs).

Plaintiff's last objection is that the ALJ discounted Ms. Luthy's testimony without providing reasons germane to her testimony. Docket No. 12 at 30. The ALJ stated that

he gave Ms. Luthy's testimony less weight because it was contradicted by the medical evidence and the record as a whole, and she was not a medical doctor or expert qualified to give evidence on plaintiff's impairment or ability to perform work activity.  R. at 37.

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The ALJ did so by summarizing Ms. Luthy's testimony and explaining why he discounted it.  R. at 37.  Plaintiff cites to *Blea v. Barnhart*, 466 F.3d 903, 913 (10th Cir. 2006), and *Bertram v. Colvin*, No. 14-cv-00031, 2015 WL 1380008, at *7 (D. Colo. Mar. 24, 2015), to support his contention that Ms. Luthy's testimony was improperly discounted.  Docket No. 12 at 31.  Both cases are unpersuasive because, unlike here, the ALJ did not mention the lay witness testimony or provide reasons for rejecting it in either case.  *See Blea*, 466 F.3d at 915; *Bertram*, 2015 WL 1380008, at *7.  Ms. Luthy's testimony was cumulative of plaintiff's testimony concerning his limitations, which the ALJ went through and detailed why he was discounting.  R. at 35-36.  While the ALJ did not specifically go through each of Ms. Luthy's claims, as he did for plaintiff, "any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (unpublished) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

Having considered each of plaintiff's objections to the ALJ's consideration of

plaintiff's and Ms. Luthy's testimony, the Court finds that the ALJ's decision was based on substantial evidence.

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**.

DATED November 25, 2020.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge